UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINQUET TECHNOLOGIES, INC., <br><br>        Plaintiff, <br><br>    v. <br><br>TILE, INC., <br><br>        Defendant. | Case No. 3:20-cv-05153-JD <br><br>**ORDER RE MOTION TO DISMISS** <br>Re: Dkt. No. 29 |

Plaintiff patentee Linquet Technologies, Inc (Linquet) has sued Tile, Inc. (Tile) for infringement of a location tag patent: U.S. Patent No. 10,163,318 (the '318 patent). First Amended Complaint (FAC), Dkt. No. 25. Linquet amended the original complaint after Tile moved to dismiss for patent ineligibility under 35 U.S.C. § 101. Dkt. No. 22. Tile now asks to dismiss the FAC on the ground that all claims of the '318 patent are directed to patent-ineligible subject matter. Dkt. No. 29. In light of "the sources properly considered on a motion to dismiss, such as the complaint, the patent, and materials subject to judicial notice," *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018), the FAC is dismissed under Section 101 and *Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. 208 (2014), with leave to amend.

## BACKGROUND

The '318 patent was issued to Linquet on December 25, 2018. Dkt. No. 25-1. It is directed to a cloud-based system for detecting the location of an object using a wireless tag and electronic devices. *Id.*; Dkt. No. 25 at ¶¶ 14-15. The invention is asserted to improve cloud-based systems for locating objects by enhancing efficiency, scalability, and privacy. Dkt. No. 25 at ¶ 26. To that end, the system couples a wireless tag associated with an object to an electronic device that

can be used to track the object. Dkt. No. 25-1 at 1:31-42, 27:66-28:38. The tag can also communicate with other electronic devices. *Id*. at 28:27-38. The tag can be configured to interact with another electronic device if it is outside of the range of the device to which it is coupled. *Id*. at 27:42-57, 28:39-52.

For the eligibility dispute, the parties focused on Claim 1 as the representative independent claim, with some discussion of Claim 2 as an additional aspect of the invention. Dkt. No. 29; Dkt. No. 34; Dkt. No. 36. The Court will treat Claim 1 as representative for present purposes, and will consider whether the additional limitations of Claim 2 make the claim patent eligible. *See Elec. Power Grp. v. Alstom S.A.*, 830 F.3d 1350, 1352 (Fed. Cir. 2016); *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) (considering the limitations of dependent claims).

Claim 1 recites:

> 1. A system for detecting placement or misplacement of an object, the system comprising:
>
> a wireless tag associated with the object;
>
> a first set of instructions stored in a first non-transitory storage medium, the first set of instructions, when executed by one or more processors in a first electronic device associated with the wireless tag, cause the one or more processors in the first electronic device to automatically:
>
> detect one or more signals from the wireless tag;
>
> determine a position of the first electronic device;
>
> determine a status of the wireless tag in response to a strength or absence of the one or more signals detected by the first electronic device, the status indicating that the wireless tag and the first electronic device are within a predetermine range or that the wireless tag and the first electronic device are outside the predetermined range;
>
> transmit the position of the first electronic device and the status to an external electronic device in response to the status indicating that the wireless tag and the first electronic device are within the predetermined range; and
>
> transmit the position of the first electronic device and the status to the external electronic device in response to the status indicating that the wireless tag and the first electronic device are outside of the predetermined range
>
> a second set of instructions stored in a second non-transitory storage

>medium, the second set of instructions, when executed by one or more processors in a second electronic device that is unassociated with the wireless tag, cause the one or more processors in the second electronic device to automatically:
>
>>detect one or more signals from the wireless tag;
>>
>>determine a position of the second electronic device
>>
>>determine an identifier for the wireless tag using the one or more signals from the wireless tag; and
>>
>>transmit the position of the second electronic device and the identifier to the external electronic device.

Dkt. No. 25-1 at 27:66-28:38.

## DISCUSSION

### I.   LEGAL STANDARDS

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires the complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." To meet that rule and survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This does not impose a probability requirement at the pleading stage. It simply calls for enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility analysis is "context-specific" and not only invites, but "requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

The Federal Circuit has "repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion. In many cases, too, evaluation of a patent claim's subject matter eligibility under § 101 can proceed even before a formal claim construction." *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373-74 (Fed. Cir. 2016) (citations omitted); *see also Aatrix*, 882 F.3d at 1125. Even so, the question of eligibility may be determined at the pleadings stage "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix*, 882 F.3d at 1125 (citing *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed Cir. 2016)); *see also Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1320 (Fed. Cir. 2019). This can be

3

particularly true for the element of an inventive concept, which may raise a question of fact that can be resolved in a motion to dismiss only if the answer may be found in the complaint, the patent, and matters subject to judicial notice. *Aatrix*, 882 F.3d at 1128.

To be sure, a patentee cannot avoid dismissal for ineligible claims purely on the basis of conclusory or generalized statements, and fanciful or exaggerated allegations that later prove to be unsupported may lead to fee shifting or other sanctions. *See Cellspin*, 927 F.3d at 1317 ("While we do not read *Aatrix* to say that any allegation about inventiveness, wholly divorced from the claims or the specification, defeats a motion to dismiss, plausible and specific factual allegations that aspects of the claims are inventive are sufficient."); *Berkheimer v. HP Inc.*, 890 F.3d 1369, 1373 (Fed. Cir. 2018) (Moore, J., concurring in denial of rehearing en banc) ("[I]f the allegations in the complaint about the invention as claimed ultimately lack evidentiary support or if the case is exceptional, district courts can award attorneys' fees to the accused infringer under either Rule 11 or [35 U.S.C.] § 285 to compensate the accused infringer for any additional litigation costs it incurs."). The inquiry in a motion to dismiss is typically confined to the contents of the complaint and the plain words of the patent that is incorporated by reference. To the extent claim construction issues might arise, the Court will adopt the patentee's proposed constructions. *Aatrix*, 882 F.3d at 1125; *IPLearn-Focus, LLC v. Microsoft Corp.*, 2015 WL 4192092, at *3 (N.D. Cal. July 10, 2015), *aff'd*, 667 F. App'x 773 (Fed. Cir. July 11, 2016).

Linquet does not categorically object to taking up patent eligibility in a pleadings motion, but says that "factual disputes" preclude dismissal. *See* Dkt. No. 34 at 12. As will be discussed, the ostensible disputes are based on wholly conclusory allegations in the FAC, and so are not a bar to moving forward. Neither side has called for claim construction as part of the eligibility inquiry, and no construction disagreements were identified in the briefs or arguments. Consequently, the Section 101 inquiry may properly be made at this stage of the case.

For the merits of the Section 101 question, the scope of patentable subject matter includes "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The "laws of nature, physical phenomena, and abstract ideas" are "specific exceptions to § 101's broad patent-eligibility principles." *Bilski v.*

*Kappos*, 561 U.S. 593, 601 (2010) (citation omitted).  These exclusions are intended to guard against undue preemption of innovation and invention.  *Alice*, 573 U.S. at 216 (citing U.S. Const., Art. I, § 8, cl. 8).  The Court must "distinguish between patents that claim the 'buildin[g] block[s]' of human ingenuity and those that integrate the building blocks into something more," because overbroad patent protection "would risk disproportionately tying up the use of the underlying ideas."  *Id*. at 217 (alterations in original) (cleaned up).

In *Alice*, the Supreme Court set out a two-part test for Section 101.  First, the Court determines "whether the claims at issue are directed to a patent-ineligible concept" such as an abstract idea, law of nature or natural phenomenon.  *Id*. at 218.  It is often "sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases" for purposes of the step one analysis.  *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016); *see also Alice*, 573 U.S. at 221 ("In any event, we need not labor to delimit the precise contours of the 'abstract ideas' category in this case.  It is enough to recognize that there is no meaningful distinction between the concept of risk hedging in *Bilski* and the concept of intermediated settlement at issue here.").  In addition, the Court may take into account undisputed facts about well-known practices that have stood the test of time.  *See Yu v. Apple, Inc.*, 1 F.4th 1040, 1045-46 (Fed. Cir. 2021).

The "purely functional nature of the claim confirms [whether the patent] is directed to an abstract idea, not to a concrete embodiment of that idea."  *Affinity Labs of Tex., LLC v. Amazon.com, Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016); *see also SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018) (describing "abstract" as turning on "the specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it").  Oversimplifying the claims should be avoided because "[a]t some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *Alice*, 573 U.S. at 217 (second alteration in original) (citation omitted).  For the technology at stake here, the relevant inquiry is "whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea."  *Enfish*, 822 F.3d at 1335; *see also BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1287 (Fed. Cir. 2018) ("For an application of an

5

abstract idea to satisfy step one, the claim's focus must be on something other than the abstract idea itself.").

If a patent is directed to a patent-ineligible concept, the second step in *Alice* is to look for an "'inventive concept' -- i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 573 U.S. at 217-18 (alteration in original) (internal quotation marks and citation omitted). This step asks, "[w]hat else is there in the claims before us?" *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78 (2012). The answer must include something "significantly more" than the abstract idea itself. *BSG Tech*, 899 F.3d at 1290. "It is well-settled that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea. Rather, the components must involve more than performance of 'well-understood, routine, conventional activit[ies] previously known to the industry.'" *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) (alteration in original) (quoting *Alice*, 573 U.S. at 225). In addition, merely reducing an abstract concept to a particular technical platform is not enough to provide the inventive element needed to support a patent. *Elec. Power Grp.*, 830 F.3d at 1354; *TriDim Innovations LLC v. Amazon.com, Inc.*, 207 F. Supp. 3d 1073, 1080 (N.D. Cal. 2016). "If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea." *BSG Tech*, 899 F.3d at 1290-91.

## II.  THE CLAIMED INVENTION IS NOT PATENTABLE

### A.  Claim 1 Is Directed To An Abstract Idea

For *Alice* step one, the initial task is to ascertain "the focus of the claimed advance over the prior art to determine if the claim's character as a whole is directed to excluded subject matter." *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1338 (Fed. Cir. 2017) (internal quotation marks omitted) (quoting *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016)). To that end, the claim may be "considered in light of the specification." *Enfish*, 822 F.3d at 1335; *see also IPLearn-Focus*, 2015 WL 4192092, at *4.

Claim 1 recites a system for locating an object associated with a wireless tag using electronic devices to detect signals from the wireless tag and determine the position of the devices. Dkt. No. 25-1 at 27:66-28:38. By its own terms, the '318 patent is "primarily directed to a wireless tag apparatus and methods of linking or tracking an object by an associated wireless tag." *Id*. at 8:38-40.

The plain language of Claim 1, along with the specification, makes clear that the claim is drawn to the abstract idea of tracking or locating an object. Tile says this is simply another iteration of the age-old practice of trying to keep track of one's belongings, *see* Dkt. No. 29 at 6, and the point is no less persuasive just because it is obvious. In effect, the '318 patent embodies the time-honored concept of using markers and identifiers to avoid losing things. Tile offers the familiar examples of placing a distinctive tag on luggage, or an identification card in a purse or wallet. A dozen similar, everyday practices come to mind with ease.

Such a "fundamental [and] long prevalent" concept is a quintessential abstract idea. *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1314 (Fed. Cir. 2016) (quoting *Alice*, 573 U.S. at 219). The functional language of Claim 1, which recites steps of detecting signals, determining position, determining status, and transmitting position, underscores its abstract nature. *See Affinity Labs*, 838 F.3d at 1269. Simply implementing the concept on a computer or a chip, as the patent essentially contemplates, does not make it non-abstract. *See DIRECTV*, 838 F.3d at 1258.

Linquet responds with the familiar refrain that Claim 1 is not abstract because it presents a technological solution to a technological problem. Dkt. No. 34 at 3-4 (citing *Packet Intelligence LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1309 (Fed. Cir. 2020)). But Linquet is not at all clear about the technological problem that the '318 patent is said to have solved. It flags purported issues with respect to pre-associating devices for community-powered tracking, and efficiency and scalability issues associated with community-powered tracking, Dkt. No. 34 at 4, but it is not obvious that these are technological problems. Linquet does not point to any language in the patent, or to factual allegations in the FAC, indicating that the patent is directed to fixing problems with community-powered tracking. The specification makes clear that the patent's disclosure

1    relates to tracking objects. Dkt. No. 25-1 at 1:22-25 ("The disclosure relates to a method of
2    bidirectional linking, connecting, communicating, and tracking objects, and in particular to a
3    method of tracking the position and status of objects using a wireless tag associated with the
4    object"); *id*. at 8:37-40 ("[T]he present disclosure is primarily directed to a wireless tag apparatus
5    and methods of linking or tracking an object by an associated wireless tag"). The '318 patent does
6    not identify pre-association of a tag with an object as a key aspect of the invention, nor is pre-
7    association a feature of Claim 1.
8          The FAC further confirms that the patent was not directed to any specific improvement of
9    community-powered tracking, but rather to providing a community-powered tracking solution in
10   the first instance. *See* Dkt. No. 25 at ¶ 19 ("[A]t the time of the '318 Patent, there existed, for
11   example, no cloud-based, community powered solutions for protecting and locating mobile
12   devices, keys, luggage, pets, and other devices, as claimed and disclosed in the '318 patent"). To
13   be sure, there are some conclusory allegations in the FAC that the '318 patent provided a technical
14   solution to a technical problem. *See, e.g., id*. at ¶ 23 ("[I]t is apparent that the claims of the '318
15   Patent, including as a whole and were applicable in ordered combination, presented a technical
16   solution and improvement over the prior art"). But that is purely *ipse dixit*, and not a statement of
17   fact.
18         Linquet's reliance on *SRI International* and *Packet Intelligence* is misplaced. In *SRI*
19   *International*, the invention was "necessarily rooted in computer technology in order to solve a
20   specific problem in the realm of computer networks," namely using network monitors to
21   "identify[] hackers or potential intruders into the network." *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930
22   F.3d 1295, 1303 (Fed. Cir. 2019). In *Packet Intelligence*, the claims helped to solve "a challenge
23   unique to computer networks, identifying disjointed connection flows in a network environment."
24   *Packet Intelligence LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1309 (Fed. Cir. 2020). Linquet
25   does not identify any similar problems specific to computers and computer networks. To the
26   contrary, it alleges that the claimed invention is directed to tracking using technology without any
27   implication that the invention solves a problem specific to computers. *See, e.g.*, Dkt. No. 25 at
28   ¶ 13 ("Linquet's innovative solution permits users to attach Linquet tags to items" "they wish to

8

protect and locate."); *id.* ("Using the Linquet network, if another Linquet user passes within range of a tag attached to a misplaced item, the item's location will be automatically, anonymously, and securely uploaded to the cloud and the owner can be notified.").

Other decisions by the Federal Circuit weigh against Linquet's claim of computer function improvement. In *TecSec*, the circuit concluded that the claims were non-abstract because they were "directed to improving a basic function of a computer data-distribution network, namely, network security." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1296 (Fed. Cir. 2020). In *Amdocs*, the claims were deemed to be non-abstract because they allowed "the system to efficiently and accurately collect network usage information in a manner designed for efficiency to minimize impact on network and system resources," thereby "enabl[ing] load distribution." *Amdocs (Isr.) Ltd. V. Openet Telecom, Inc.*, 841 F.3d 1288, 1303 (Fed. Cir. 2016).

The patents in *TecSec* and *Amdocs* differ from the '318 patent in a critical way that underscores the weakness of Linquet's arguments. The specifications of those patents clearly identified the improvements to computer functionality, while the specification of the '318 patent fails to provide any statements that the invention is directed to any improvements to computer functionality. The conclusory statements in the FAC do not improve matters for Linquet. *See* Dkt. No. 25 at ¶ 26 ("[P]rivacy is greatly improved by limiting the circumstances under which a stranger's phone detects the tag"); *id.* ("[T]he '318 Patent's unconventional combination of elements improves both the efficiency and scalability of cloud-based, community-powered tracking network platforms"). These read more like marketing soundbites than allegations of fact.

### B. Claim 1 Lacks An Inventive Concept

Turning to *Alice* step two, Claim 1 "does not include an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible invention." *Yu*, 1 F.4th at 1045. The presence of an inventive concept ensures a patent contains "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.'" *Id.* at 217-18 (quoting *Mayo*, 566 U.S. at 72-73). The "inventive concept must be evident in the claims" themselves. *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017).

That is not the situation here.  Claim 1 uses conventional elements and components that are ordered in a conventional way, without adding anything inventive.  *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715-16 (Fed. Cir. 2014).  Claim 1 teaches a system with a wireless tag associated with an object, a first electronic device associated with the tag, and a second electronic device unassociated with the tag where the first device detects signals from the tag to determine the position of the tag and whether it is within a predetermined range and the second device detects signals from the tag to determine its position.  Dkt. No. 25-1 at 27:66-28:38.  The claims simply recite the abstract idea of tracking implemented using conventional components generic to electronic devices.  *DIRECTV, LLC*, 838 F.3d at 1263.

Linquet's claim of factual disputes about inventiveness is unavailing.  It says it has alleged facts showing that the '318 patent is more than a patent-ineligible abstract idea, but this contention is not supported by the FAC.  Linquet cites FAC paragraphs 17-18, 23, and 25-26, Dkt. No. 34 at 13-14, but these paragraphs offer only conclusory statements far removed from anything in the claims and the specification.  *See* Dkt. No. 25 at ¶ 23 ("[The claims] presented a technical solution and improvement of the prior art, including using the claimed elements in a non-conventional, non-generic, and non-routine manner to arrive at a novel technical solution."); *id*. ("[The claims] amount to an inventive concept for overcoming particular problems in systems protecting and locating items"); *id*. at ¶ 25 ("This process was not well-known, routine, conventional at the time of issuance of the '318 Patent."); *id*. at ¶ 26 ("[P]rivacy is greatly improved by limiting the circumstances under which a stranger's phone detects the tag"); *id*. ("[T]he '318 Patent's unconventional combination of elements improves both the efficiency and scalability of cloud-based, community powered tracking network platforms").  These purely conclusory allegations do not establish inventiveness.  *See Cellspin*, 927 F.3d at 1317.

Linquet's frequent citation to a decision in this District about an unrelated tagging patent, *Cellwitch Inc. v. Tile, Inc.*, Case No. 4:19-01315, 2019 WL 10734767 (N.D. Cal. Nov. 21, 2019), is misdirected.  The complaint in *Cellwitch* contained specific allegations of inventiveness supported by language in the specification of the patent-in-suit.  *See id.* at *7.  The same is not true for the complaint here.

1          Linquet's suggestion that an inventive concept can be found in the interoperability

2  achieved from Claim 1's second, unassociated electronic device is equally unavailing. Dkt. No.

3  34 at 10. It says that the elements of the claim "interoperate in a non-conventional, non-generic,

4  and non-routine manner," *id*., but does not point to any factual allegations or statements in the

5  patent that demonstrate the unconventionality of the claim. Linquet's claim of novelty for the

6  '318 patent is of no moment for present purposes. *Id*. at 14 (citing to Dkt. No. 25 ¶ 23). It is true

7  that "the § 101 patent-eligibility inquiry and, say, the § 102 novelty inquiry might sometimes

8  overlap," but the "search for a § 101 inventive concept is distinct from demonstrating § 102

9  novelty." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016)

10 (quoting *Mayo*, 566 U.S. at 90) (cleaned up). Linquet's speculation that the patent examiner did

11 not reject the claims for lack of patent-eligibility under § 101 is also irrelevant. *See In re Rudy*,

12 956 F.3d 1379, 1383 (Fed. Cir. 2020).

### C.      Claim 2 Does Not Save The Day For Linquet

14         The additional limitations of Claim 2 do not warrant a different conclusion under *Alice*.

15 Claim 2, which depends from Claim 1, adds that a controller in the tag may render the tag

16 detectable to the second, unassociated electronic device dependent on whether the wireless tag is

17 outside the predetermined range of the first electronic device. Dkt. No. 25-1 at 28:39-52. This

18 limitation is directed to the same abstract idea as Claim 1: tracking an object using electronic

19 means. The only new element in Claim 2 is the controller that essentially acts as an on/off switch

20 for the tag to communicate with devices that it is not associated with in the first instance.

21         Linquet again contends that Claim 2 presents a technological solution to a technological

22 problem. Dkt. No. 34 at 3-4. As before, Linquet does not provide any language in the patent or

23 factual allegations in the FAC to demonstrate that the patent is directed to fixing problems

24 associated with community-powered tracking. And Linquet again does not identify the computer-

25 specific problem at hand, or how Claim 2 solves it.

26         Claim 2 also lacks an inventive concept. The limitations of Claim 2 explain that the

27 controller monitors signals with the first electronic device to determine whether or not to render

28 the wireless tag detectable to other devices. Dkt. No. 25-1 at 28:39-52. Claim 2 adds a generic

United States District Court
Northern District of California

controller that performs the functional steps necessary to render the tag detectable to other electronic devices. This addition of purely functional steps and generic technology does not render the claim inventive. *See, e.g.*, *Two-Way Media Ltd. V. Comcast Cable Commc'n, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017) (finding a claim ineligible where nothing in the claims "require[d] anything other than conventional computer and network components operating according to their ordinary functions").

Linquet acknowledges that the limitations of Claim 2 depend on generic components but maintains that those components work together in unconventional ways. Dkt. No. 34 at 11. It says that conventional tracking solutions would allow tags to be detectable by unassociated devices in all instances. *Id*. at 12 (citing FAC ¶ 26). But how this might be an unconventional way for the generic components to work together is left unsaid. Linquet's allegation that this was an unconventional combination is again purely conclusory, and does not state how the combination and ordering of the components was unconventional. *See Two-Way Media*, 874 F.3d at 1339 ("Inquiry therefore must turn to any requirements for *how* the desired result is achieved." (quoting *Elec. Power Grp. LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016))).

## CONCLUSION

Because the '318 patent is directed to an abstract idea and lacks an inventive concept, the FAC is dismissed. In light of the plain language of the claims in the patent, the Court has some doubt that Linquet can amend around this problem. Even so, Linquet may file an amended complaint by October 8, 2021. Failure to meet this deadline will result in dismissal with prejudice under Rule 41(b).

**IT IS SO ORDERED.**

Dated: September 15, 2021

JAMES DONATO
United States District Judge