1

2

3

4            UNITED STATES DISTRICT COURT

5            NORTHERN DISTRICT OF CALIFORNIA

6

7   LINQUET TECHNOLOGIES, INC.,              Case No. 3:20-cv-05153-JD

            Plaintiff,
8
                                             **ORDER RE MOTION TO DISMISS**
9        v.

10  TILE, INC.,

            Defendant.
11

12

13        In this patent infringement action, plaintiff Linquet Technologies, Inc. (Linquet) has

14  accused the tracking tag products of defendant Tile, Inc. (Tile) of infringing U.S. Patent No.

15  10,163,318 (the '318 patent).  Dkt. No. 71 (second amended complaint (SAC)); Dkt. No. 71-1

16  ('318 patent).  The Court dismissed the first amended complaint (FAC), Dkt. No. 25, on the

17  grounds that the '318 patent was directed to patent-ineligible subject matter under 35 U.S.C.

18  § 101.  *See* Dkt. No. 68.  Linquet was granted leave to file the SAC, which Tile asks to dismiss

19  again for patent-ineligible subject matter.  Dkt. No. 72.  The parties' familiarity with the record,

20  and the Court's prior order in particular, is assumed.  Tile's motion to dismiss is granted, and the

21  case is terminated.

22                              **DISCUSSION**

23        The Court's prior order stated the governing law for a Rule 12(b)(6) motion and patent

24  eligibility under 35 U.S.C. § 101, and the facts of this dispute.  Dkt. No. 68.  It is incorporated

25  here.  The Court detailed the pertinent standards in another recent decision.  *See Broadcom Corp.*

26  *v. Netflix, Inc.*, No. 20-cv-4677-JD, 2021 WL 4170784 (N.D. Cal. Sep. 14, 2021).  That discussion

27  is also incorporated here.

28

United States District Court
Northern District of California

1    In summary, the Federal Circuit has determined that "it is possible and proper to determine

2    patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion." *Genetic Techs. Ltd. v. Merial*

3    *L.L.C.*, 818 F.3d 1369, 1373-74 (Fed. Cir. 2016).  The Supreme Court set out a two-part test for

4    Section 101 in *Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. 208 (2014).  First, the

5    Court determines "whether the claims at issue are directed to a patent-ineligible concept" such as

6    an abstract idea, law of nature or natural phenomenon.  *Id*. at 218.  If a patent is directed to a

7    patent-ineligible concept, the second step in Alice is to look for an "'inventive concept' -- i.e., an

8    element or combination of elements that is sufficient to ensure that the patent in practice amounts

9    to significantly more than a patent upon the [ineligible concept] itself."  *Id*. at 217-18.

10    The parties focus on Claim 1 as the representative independent claim.  Dkt. No. 72 at 5-6;

11    Dkt. No. 73 at 10-11.  Although Linquet also refers to Claim 2, it does not provide independent

12    analysis of Claim 2.  The Court will consequently treat Claim 1 as representative.  *Elec. Power*

13    *Grp. V. Alstom S.A.*, 830 F.3d 1350, 1352 (Fed. Cir. 2016).

14    **I.      THE '318 PATENT IS DIRECTED TO AN ABSTRACT IDEA.**

15    For *Alice* step one, the initial task is to ascertain "the focus of the claimed advance over the

16    prior art to determine if the claim's character as a whole is directed to excluded subject matter."

17    *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1338 (Fed. Cir. 2017)

18    (internal quotation marks omitted) (quoting *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838

19    F.3d 1253, 1257 (Fed. Cir. 2016)).  To that end, the claim may be "considered in light of the

20    specification."  *Enfish*, 822 F.3d at 1335; *see also IPLearn-Focus, LLC v. Microsoft Corp.*, No.

21    14-cv-151-JD, 2015 WL 4192092, at *4 (N.D. Cal. Jul. 10, 2015).

22    The Court previously determined that Claim 1 was directed to the abstract and "time-

23    honored concept of using markers and identifiers to avoid losing things."  Dkt. No. 68 at 7.

24    Nothing has changed in the SAC on that score.  As such, Claim 1 is a quintessential abstract idea.

25    *See Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1314 (Fed. Cir. 2016) (quoting

26    *Alice*, 573 U.S. at 219).  The '318 patent simply implements the concept of tracking objects using

27    computer technology, which does not make it non-abstract.  *Affinity Labs*, 838 F.3d at1258.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1       Linquet makes two primary objections to the Court finding that the '318 patent is directed

2  to an abstract idea.  Linquet says that the claims are "limited to rules with specific characteristics,"

3  analogizing the '318 patent to the patent at issue in *McRO, Inc. v. Bandai Namco Games America,*

4  *Inc.*, 837 F.3d 1299 (Fed. Cir. 2106).  Dkt. No. 73 at 10-11.  But Linquet has not demonstrated

5  why that is so.  *McRO* involved lip synchronization technology and the patent claimed specific

6  rules that were used to animate facial expressions.  *McRO*, 837 F.3d at 1303-04.  The claims set

7  out an automation method that utilized rules, rather than artists, to set various parameters for the

8  animation.  *Id.* at 1313.  Rather than claiming all rules that might be used in animation, the patent

9  focused on limited mathematical rules that were different from the determinations an animator or

10  artist would have made for the same process.  *Id.* at 1314.  The rules in *McRO* went "beyond

11  merely organizing existing information into a new form or carrying out a fundamental economic

12  practice."  *Id.* at 1315.  The same cannot be said for the '318 patent.  The set of instructions used

13  in Claim 1 describe detecting signals to determine the location of devices, Dkt. No. 71-1 at 28:1-

14  26, which is nothing more than carrying out the fundamental process of tracking objects.

15       Linquet also repeats the contention that the '318 patent is directed to improved network

16  functionality and performance, making the '318 patent a technological solution to a technical

17  problem.  *Id.* at 12-13.  Linquet says that the '318 patent solves "security issues and overburdening

18  data and network resources," i.e. privacy, scalability, and efficiency.  *Id.* at 12.  The Court rejected

19  Linquet's claims that the '318 patent solves a technical solution because Linquet did not identify

20  language in the patent or non-conclusory allegations in the FAC that showed the patent's

21  disclosures were directed to fixing problems with community-powered tracking.  Dkt. No. 68 at 7-

22  8.

23       The SAC does not materially change this situation.  The SAC makes the same conclusory

24  statements that Claim 1 "increased scalability and efficiency of the system as a whole" and

25  "improves the functionality of the computers involved."  Dkt. No. 71 ¶¶ 32, 39.  Unlike the FAC,

26  though, these allegations are made with reference to the declaration of Dr. Daniel W. Engels,

27  which was attached to the complaint.  Dkt. No. 71-6.  But neither the SAC nor Dr. Engels'

28  declaration points to the patent to show that there was a technical problem with community-

1    powered tracking systems that needed to be solved. *See also* Dkt. No. 68 ("Linquet does not point

2    to any language in the patent, or to factual allegations in the FAC, indicating that the patent is

3    directed to fixing problems with community-powered tracking.").

4         Dr. Engels takes pains to say that the prior art for the '318 patent did not provide for

5    "privacy-preserving, scalable, cloud-based, community-powered solutions" for tracking items.

6    Dkt. No. 71-6 ¶ 23-29.  This is based on his own experience with electronic product code systems

7    and radio frequency identification transponders, which had similar challenges.  *Id*.  While it may

8    be that the '318 patent presented an innovation over the prior art, Dr. Engels' declaration is

9    relevant to novelty and obviousness analysis under 35 U.S.C. §§ 102 and 103, rather than whether

10   the claims are directed to eligible subject matter.  *See Two-Way Media Ltd. v. Comcast Cable

11   Commc'n, LLC*, 874 F.3d 1329, 1339-40 (Fed. Cir. 2017).  The Federal Circuit has repeatedly

12   cautioned that "[e]ligibility and novelty are separate inquiries."  *Id*. at 1340; *see also Affinity Labs*,

13   838 F.3d at 1263.

14        In addition, the '318 patent itself is silent on whether such problems existed and needed

15   solving.  The Court declines to accept allegations in the SAC and in Dr. Engels' declaration that

16   are not grounded in the plain language of the patent.  *See Secured Mail Solutions LLC v. Universal

17   Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017); *Athena Diagnostics, Inc. v. Mayo Collaborative

18   Services, LLC*, 915 F.3d 743, 755-56 (Fed. Cir. 2019).  Consequently, the Court finds that the '318

19   patent is not directed toward providing a technical solution to a technical problem, and the patent

20   is directed to a patent-ineligible abstract idea.

21   **II.      THE '318 PATENT LACKS AN INVENTIVE CONCEPT.**

22        Turning to *Alice* step two, Claim 1 "does not include an inventive concept sufficient to

23   transform the claimed abstract idea into a patent-eligible invention."  *Yu*, 1 F.4th at 1045.  The

24   presence of an inventive concept ensures a patent contains "an element or combination of elements

25   that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent

26   upon the ineligible concept itself.'"  *Id*. at 217-18 (quoting *Mayo*, 566 U.S. at 72-73).  The

27   "inventive concept must be evident in the claims" themselves.  *RecogniCorp, LLC v. Nintendo

28   Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017).

1　　　　　The Court previously found that the '318 patent lacked an inventive concept because the

2　claims used conventional elements and components ordered in a conventional way.  Dkt. No. 68 at

3　10.  Neither the allegations in the SAC nor Dr. Engels' declaration demonstrate otherwise.

4　　　　　Linquet says that "the claims supply an inventive concept because the specific privacy-

5　preserving, scalable, cloud-based, community-powered system claimed addresses technological

6　problems in the prior art regarding lack of privacy, scalability, and efficiency in a non-

7　conventional and non-routine way."  Dkt. No. 71 ¶ 42.  Rather than supporting this allegation with

8　statements in the '318 patent, Linquet again relies on Dr. Engels' discussion of the prior art to the

9　effect that privacy, scalability, and efficiency were missing.  *Id*. ¶ 42.  To the extent that Linquet

10　even mentions the '318 patent, it merely recites the system described in the claims of the '318

11　patent and then points to Dr. Engels' declaration to claim that the system solved the technical

12　problems that existed in the prior art.  *See, e.g.*, *id*. ¶¶ 43, 45-46, 48.

13　　　　　Linquet's suggestion that Claim 1 improves privacy, scalability, and efficiency in a non-

14　conventional manner are no less conclusory and untethered to the '318 patent.  For example,

15　Linquet alleges that the system "use[s] a network of tags and electronic devices in a manner not

16　well-known, routine, and conventional to address technological problems," *id*. ¶ 45, without

17　explaining how any of the tags and electronic devices are configured or used in unconventional

18　ways.  Nor does Linquet show that the ordered combination of its component devices is non-

19　routine.

20　　　　　The SAC and Dr. Engels' declaration also cite to prior art that was considered during

21　prosecution of the '318 patent in an attempt to show the nonconventional nature of the '318 patent.

22　*See id*.; Dkt. No. 71-7 ¶¶ 24-29.  Even if the '318 patent was an improvement over the prior art,

23　Linquet's reliance on the prior art does not show that the '318 patent's components or combination

24　of components were nonconventional.  The Federal Circuit has explained that while "it is true that

25　'the § 101 patent-eligibility inquiry and, say, the § 102 novelty inquiry might sometimes

26　overlap,'" it is also true that "a claim for a new abstract idea is still an abstract idea."  *Synopsys,*

27　*Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) (quoting *Mayo*, 566 U.S. at

28　90).

United States District Court
Northern District of California

5

United States District Court
Northern District of California

1      As a closing note, Linquet's suggestion that fact disputes preclude dismissal under Section

2  101 are unfounded.  *See* Dkt. No. 73 at 1.  Linquet raised the same objection in the prior motion,

3  which the Court turned aside because the "factual disputes" were based on conclusory allegations

4  in the FAC.  Dkt. No. 68 at 4.  The same is true here -- the SAC and Dr. Engels' declaration

5  provide only conclusory allegations that do not raise factual disputes that would preclude

6  dismissal under Section 101.

7                                 **CONCLUSION**

8      The SAC is dismissed.  Because Linquet has now had more than one opportunity to

9  amend, and the guidance provided by the Court's prior order, the dismissal is with prejudice, and

10  the case is closed.

11      **IT IS SO ORDERED.**

12  Dated:  July 18, 2022

13

14

                       JAMES DONATO

15                      United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

6